**EXHIBIT 15**

EXHIBIT

BernArd 10
                    8/21

October 9, 2002

To: Employee File of Ed Bernard

From: Dawn Trumps

Re: **Update**

During my visit to the School on 10/4/02, Joyce and I met with several employees to clarify the ongoing discrimination allegations and tensions in Easton.

First we met with Mark D'Arcy (Acting Facilities Manager/full-time Instructor) regarding the incident of the previous day. Mark has forbidden Connie Erdell and Bob Shafer from approaching Ed directly and trying to smooth things over. Ed has chosen to separate himself physically from the rest of the department at breaks and lunch and no other employee should attempt to get more involved in the situation than necessary.

At a 7:30am department meeting, Mark told the Maintenance department that they may not come to him with disrespectful or disparaging comments about other employees. If they do, they will be asked to clock out and disciplinary action will follow. Mark's intention is to stop all of the "finger pointing" and have employees focus on their own work instead of others.

Mark clarified that with the previous day's incident Ed did not refuse to do an assigned task. Mark offered Ed the opportunity to go on the Bertram to Tilghman Island as a perk but Ed replied that he would prefer to stay and take the other boats out of the water.

At counsel's suggestion, Joyce and I spoke with Scott Smith who allegedly made the comment that Ed didn't like working with white boys. Scott acknowledged making the comment and he believes it to be true. I advised Scott that it was okay for him to hold whatever opinions he had but it was inappropriate to comment on such a thing to others, specifically with all of the current tension surrounding the issue. Scott told us that he approached Ed that morning to ask what was up with him (did he have a problem with him?) and Ed kind of shrugged like he didn't want to socialize. I asked Scott directly a minimum of three times if he felt that he had been discriminated against in the workplace as a consequence of any protected characteristic. He said he had not. Scott went on to complain about other issue and employees in the department.

Joyce and I also spoke with Ed for more than an hour, namely to clarify whether additional incidents have occurred since his original complaint of 9/4/02 (according to his attorney's letter dated 9/24).

Ed started by telling us how stressed he was and that he was not sleeping well, having to take sleeping pills and still coming to work not well rested.

Regarding his attorney's letter, Ed claims that nothing has been directed at him. He recalled an incident approximately one week after his complaint where a temporary (Daryl) was putting in lightbulbs and Will Helms commented to him that he couldn't count to 18. The temporary worked with Ed later that same day and mentioned it to him.

Ed said that even Bob Shafer (Supervisor) is stressed with the current status of things. According to Ed, Bob is so stressed out about the hiring of a Facilities Manager (without having considered him), our recommendation that he keep the newspaper business outside of School business, the tension in the department, and the issues surrounding Connie Erdell that he has commented to Ed that "he couldn't take it no more".

Ed said that he was hired as a Mechanic and that he still has the ad at home. He can work on the vehicles, tractors, mowers, and boats. We worked in such a capacity for approximately 6 months when he was asked to take over the boats.

He is frustrated that he is frequently called off of his job (boats) to help with the dorm upgrade project with the others (Will, Scott, Bob Weaver) and they are frequently goofing off instead of working. He doesn't mind helping others but he is angry that they are aggressively trying to point blame at others. He says that he gets defensive when he is picked apart. At one point, he questioned his job description with Lee Kincaid and Henry Phillips and was told by both that he had to do whatever was asked of him. He again commented that he didn't mind helping out but not everyday; he thinks that he is being called over to do the work that the others don't want to do and that Bob Shafer won't stand up to them.

Ed said that he has chosen to isolate himself from everyone since he made the complaint because he doesn't feel like he had to subject himself to someone else's ignorance. "To be sure that nothing is said to me, I stay away from it. This is what spawns postal workers to go off."

Ed commented to me that I didn't understand what he was going through. I told him that we cared very much about what was going on and that we were trying to understand. He came back with "the only thing you care about is getting on the phone with your attorney to make this go away". I told him that he was wrong and that on September 4th when he made the original complaint to me, I was on the phone that evening from home with Joyce before any counsel was brought into the matter.

Ed said that Will, Scott, and Bob have set up Bob Shafer, Connie Erdell, Jerry Lee, and himself as targets and they are trying to get everyone of them fired. He cannot understand why they are being so hard on Bob Shafer since he has done so much for them. They have a perception that Bob favors him because of the paper route but Bob calls on him because he gets the job done.

Over the course of his two years at the School, he has heard Will comment about "doing nigger work", jokingly ask "do you know how to hang a nigger", and the comment yesterday about him being "prejudice against white boys".

That morning Ed went to the Cafeteria for lunch for the first time in months figuring that Mark's talk with them earlier would have settled everyone down. Scott was laughing and saying "I have to punch out and go home. We can't be having this conversation". Ed turned around and walked out.

He says that he is tormented every morning at 6:30 when he has to get ready for work. "You can't do anything about it. It's inbred in these people. You'd have to fire everyone including me and start all over".

Ed also commented that one day he may come in and "climb Will Helms like a tree and snap his neck like a branch". I immediately told Ed that was inappropriate and that we wouldn't tolerate any form of violence or physical confrontation in the workplace.

Joyce closed the conversation by telling Ed that we were making changes and that the work environment would get better. She encouraged him to continue talking to us. Ed apologized to her about his comment from the previous day about not trusting her or Mike.

**EXHIBIT 16**

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 120-2003-01912 C |

| Maryland Commission On Human Relations | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Mr. Edward G. Bernard, Jr. | (410) 820-4143 | 12-22-1968 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2 Brookletts Avenue - Unit A - Easton, MD 21601 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| CALHOUN MEBA ENGINEERING SCHOOL | 15 - 100 | (410) 822-9600 |

| Street Address | City, State and ZIP Code |
|---|---|
| 27050 St. Michaels Rd.  Easton, MD 21601 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

| ☐ RACE | ☐ COLOR | ☐ SEX | ☐ RELIGION | ☐ NATIONAL ORIGIN |
|---|---|---|---|---|
| ☒ RETALIATION | ☐ AGE | ☐ DISABILITY | ☐ OTHER (Specify below.) | |

DATE(S) DISCRIMINATION TOOK PLACE

| Earliest | Latest |
|---|---|
| 10-01-2002 | 12-30-2002 |

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I.    I am a Maintenance Mechanic. In October 2002 I filed charge number 120-2002-11475C. Immediately after the employer was notified that the charge was closed it began to retaliate against me. I was given verbal and written notice that I would be demoted and moved to the grounds crew and that I would assume additional responsibilities without receiving additional wages. On November 25, 2002 I was given two written warnings.

II.    The employer did not say why it demoted me or why it did not pay me additional wages. It said I received the two warnings for attendance issues.

III.    I believe I was retaliated against in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, with respect to demotion, denial of wages and discipline.

| | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 7/10/2003    x *Edward G Bernard Jr*<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

EXHIBIT
Bernard 23
8/21/03

**EXHIBIT 17**



# CALHOON MEBA ENGINEERING SCHOOL

27050 St. Michaels Road   Easton Maryland 21601   (410) 822-9600 Fax (410) 822-7220

**EXHIBIT**

Bernard 17

# Memorandum

**Date:**    November 6, 2002

**To:**    Ed Bernard

**From:**    Mark D'Arcy

**Subject:**  Boat Condition Reports, Boat Winterization, and Modification to your Assigned Duties

Dear Mr. Bernard,

In light of the Boating Season being over, it's time to do a brief condition report on each boat.  Please find attached forms for use in generating these reports.  Use one form for each boat.  Attach extra paper and or any documents if needed.

The report will not need to be detailed, except for explanations about 'POOR' rated equipment. Do not spend too much time on the reports, I think you should be able to complete all of them in a couple of hours at most.

Please remember to include in your reports, if each boat has or has not been winterized.  If it has not been winterized, please indicate in your report what remains to be done for complete Winterization.

Please finish these reports no later than tomorrow.

Effective tomorrow, when you submit the reports, and until further notice you are going to be relieved of your day to day responsibilities concerning the boats.  You may still be assigned specific jobs on the boats from time to time as we need, but your responsibility for the boats ends tomorrow until further notice.

You will retain most of the remainder of your regular duties including but not limited to performing pre-scheduled vehicle servicing and fueling and otherwise assisting as directed.

In lieu of your boat responsibilities, you are being assigned to the grounds crew under the direct supervision of Vernon Freeman.  There you will utilize any prior experience and enthusiasm to assist as directed.  Your grounds crew assignment takes precedence over your other duties in that you need to coordinate vehicle services etc. with Vernon Freeman and Bob Shafer.  Your normal day will start and end in the grounds crew, unless directed to do otherwise.  Your assignment helps us fill a current vacancy in the Grounds Crew due to an employee absence.  I checked your personnel file and there was a note about your being very interested in Tree/Shrub Trimming and Pruning etc.
I am looking forward to the positive results I expect to see from this new arrangement.

Thanks You,
Mark D'Arcy

*Returned to boats after*

**EXHIBIT 18**

## SECTION 4: ATTENDANCE AND LEAVE POLICIES

ATTENDANCE

The success of the CMES depends on its efficient operation and service to the membership. Regular and punctual attendance is a primary characteristic of a dependable and responsible employee. When you have an unscheduled absence from work, or are late in arriving or early in leaving, your work and the work of others is disrupted. Chronic, habitual or excessive absenteeism or lateness, as determined by the CMES, will not be tolerated. Frequent absenteeism or lateness may result in disciplinary action up to and including termination.

After the probationary period, every employee earns accrued variable paid time to be used throughout the year (see Variable Paid Time Policy, section 6). Employees are expected to utilize this paid time wisely and to that end, CMES allow all nine of these paid days to be taken in quarter-hour increments. Employees are required to utilize any available variable paid time and vacation time before any unpaid absences will be allowed.

After an employee has exhausted all forms of paid absence, the CMES and Plans will document all incidents of unpaid absences, lateness, or early leave and act in accordance with our progressive discipline plan. The progressive discipline plan for absenteeism within a rolling six-month period is as follows:

| | |
|---|---|
| 3rd incident of absence, lateness, or early leave | verbal warning |
| 5th incident of absence, lateness, or early leave | written warning |
| 7th incident of absence, lateness, or early leave | final written warning |
| 9th incident of absence, lateness, or early leave | termination |

In the event that you require an unscheduled absence from work, it is required that you contact the Office Manager no later than one hour after start of your shift on the morning of the absence and leave the following information: name, reason for absence, and any request for paid time off. The information will be forwarded to the Payroll Department as required. If an employee is absent from work for two consecutive days without calling CMES, this will be considered to be a voluntary quit and termination will be become effective immediately. If an employee has five or more consecutive unpaid days absent, his/her paid leave accruals (vacation and variable paid time) will be adjusted accordingly.

Any unscheduled absence resulting in three or more consecutive days should be accompanied by a documentation necessitating the extended absence. In the event of illness, a physician's note stating the diagnosis and the date the employee is able to return to work must be provided. Unless the employee has given the specific dates of the extended absence, he/she must continue to call in each day to the Office Manager.

Any absence of two or more consecutive days within a work week will be reported to the Human Resources Manager by the Office Manager on the second day of absence. This practice will allow immediate notification to the Payroll Department and fewer errors in payroll processing, termination processing, and COBRA processing.

**EXHIBIT 19**

EXHIBIT

Bernard 27
8/21/03

# EMPLOYEE WARNING NOTICE

| Employee | Ed Bernard | Date of Warning | 9/25/2002 |
|---|---|---|---|
| Department | Maintenance | Supervisor | B. Shafer |

## Type of Violation

| Absenteeism | XX | Carelessness | | Insubordination | |
|---|---|---|---|---|---|
| Lateness/Early Quit | | Failure to Follow Instructions | | Violation of Safety Rules | |
| Rudeness to Employees/Members | | Willful Damage to Material/Equipment/Property | | Working on Personal Matters | |
| Unsatisfactory Work Quality | | Violations of Company Policies or Procedures | | Other | |

## Previous Warnings

| | ORAL | WRITTEN | DATE | BY WHOM |
|---|---|---|---|---|
| 1st Warning | | | | |
| 2nd Warning | | | | |
| 3rd Warning | | | | |

**Employer Statement**
Date of Incident _____ Time _____
Accumulation of 6 incidents under
Attendance Policy:
7/23/02 Left Early 9:54 am
8/12/02 Late 8:30am
9/4/02 Left Early 2pm headache
9/9 Absent
9/17 Absent
9/25 Absent

Issuing Manager _Dixon Trump_
Date _10/7/02_

**Employee Statement**
I agree with the Employer's Statement. [ ]
I disagree with the Employer's description of
violation for the following reasons: [ ]

_____
_____
_____
_____

Employee Signature _Edward Bernard_
Date _____

## Action to be taken

| Warning | XXX |
|---|---|
| Probation | |
| Suspension | |
| Termination | |
| Other | |

**Consequence should Incident occur again:**
Additional incidents of absenteeism, lateness, or early leave _within(next_
will result in disciplinary action up to and including _3 wks) and_
termination. _beyond_

## I have read this Employee Warning Notice and understand it.

Signature of Employee
Manager Signature _Dixon Trump_      Date _10/2/02_

Routing _J A Mctts_      Date _10/2/0c_
      Date _____
      Date _____

**EXHIBIT 20**

EXHIBIT
Bernard 28
9/2/07

# EMPLOYEE WARNING NOTICE

| Employee | ED BERNARD | | Date of Warning | 12/9/2002 |
|---|---|---|---|---|
| Department | MAINTENANCE | | Supervisor | MARK D'ARCY |

## Type of Violation

| | | | | | |
|---|---|---|---|---|---|
| Absenteeism | XX | Carelessness | | Insubordination | |
| Lateness/Early Quit | | Failure to Follow Instructions | | Violation of Safety Rules | |
| Rudeness to Employees/Members | | Willful Damage to Material/Equipment/Property | | Working on Personal Matters | |
| Unsatisfactory Work Quality | | Violations of Company Policies or Procedures | | Other | |

## Previous Warnings

| | ORAL | WRITTEN | DATE | BY WHOM |
|---|---|---|---|---|
| 1st Warning | | WRITTEN WARNING | 10/2/02 | DAWN TRUMPS |
| 2nd Warning | | WRITTEN WARNING | 11/25/02 | DAWN TRUMPS |
| 3rd Warning | | | | |

## Employer Statement

Date of Incident _____ Time _____

Attendance in the last 90 days as follows:
Absent 9/25/02, 11/12/02, 11/13/02, 11/15/02; late arrival 11/19/02 and 11/22/02 late arr./early leave 11/25/02

7 incidents per Attendance Policy

Issuing Manager _____
Date _____

## Employee Statement

I agree with the Employer's Statement. [ ]

I disagree with the Employer's description of violation for the following reasons: [ ]

_____
_____
_____
_____
_____

Employee Signature _____
Date _____

## Action to be taken

| | |
|---|---|
| Warning | XXX |
| Probation | |
| Suspension | |
| Termination | |
| Other | |

Consequence should incident occur again:
Additional incidents of absenteeism may result in displinary action up to and including termination.

I have read this Employee Warning Notice and understand it.

Signature of Employee _____ Date _____
Manager Signature _____ Date _____

**Routing** _____ Date _____
_____ Date _____
_____ Date _____

*Allowed vacation to be advanced for 11/12, 11/14 and 11/15 even though it was not approved (see email), thus above absences paused.*

**EXHIBIT 21**

# EMPLOYEE WARNING NOTICE



EXHIBIT P5

8-27-03

COPY

| Employee | EB BERNARD | Date of Warning | 11/25/2002 |
|---|---|---|---|
| Department | MAINTENANCE | Supervisor | MARK D'ARCY |

## Type of Violation

| | | | | | | |
|---|---|---|---|---|---|---|
| Absenteeism | XX | Carelessness | | Insubordination | | |
| Lateness/Early Quit | | Failure to Follow Instructions | | Violation of Safety Rules | | |
| Rudeness to Employees/Members | | Willful Damage to Material/Equipment/Property | | Working on Personal Matters | | |
| Unsatisfactory Work Quality | | Violations of Company Policies or Procedures | XX | Other | | |

## Previous Warnings

| | ORAL | WRITTEN | DATE | BY WHOM |
|---|---|---|---|---|
| 1st Warning | | | | |
| 2nd Warning | | | | |
| 3rd Warning | | | | |

## Employer Statement

Date of Incident  11/15/2002  Time _____

CMES POLICY STATES EMPLOYEE MUST CALL IN WITHIN ONE HOUR AFTER START OF SHIFT(HANDBOOK, PG. 19). EMPLOYEE WAS ABSENT AND FAILED TO CALL SUPERVISOR.

Issuing Manager  MARK D'ARCY
Date  11/25/2002

## Employee Statement

I agree with the Employer's Statement. ☐

I disagree with the Employer's description of violation for the following reasons: ☐

Employee Signature _____
Date _____

## Action to be taken

| | |
|---|---|
| Warning | XX |
| Probation | |
| Suspension | |
| Termination | |
| Other | |

Consequence should incident occur again:
SHOULD ADDITIONAL INCIDENTS OF FAILURE TO REPORT AN ABSENCE OCCUR, DISCIPLINARY ACTION WILL BE TAKEN UP TO AND INCLUDING TERMINATION OF EMPLOYMENT.

I have read this Employee Warning Notice and understand it.
Signature of Employee
Manager Signature  *Mark D'Arcy*   Date  11/26/02

Routing  *(witness)*  X _____   Date  11/26/02
Date _____
Date _____

*Employee declined opportunity to comment or make a statement re this warning and refused to sign this notice.*
*— Mark D'Arcy*

**EXHIBIT 22**

EXHIBIT
Bernard 29
8/21/03

# EMPLOYEE WARNING NOTICE

| Employee | Ed Bernard | Date of Warning | 05/15/2003 |
|---|---|---|---|
| Department | Maintenance | Supervisor | John McNally |

## Type of Violation

| | | | | | |
|---|---|---|---|---|---|
| Absenteeism | X | Carelessness | | Insubordination | |
| Lateness/Early Quit | X | Failure to Follow Instructions | | Violation of Safety Rules | |
| Rudeness to Employees/Members | | Wilful Damage to Material/Equipment/Property | | Working on Personal Matters | |
| Unsatisfactory Work Quality | | Violations of Company Policies or Procedures | | Other | |

## Previous Warnings

| | ORAL | WRITTEN | DATE | BY WHOM |
|---|---|---|---|---|
| 1st Warning | | | | |
| 2nd Warning | | | | |
| 3rd Warning | | | | |

**Employer Statement**
Date of Incident _____ Time _____
Employee has accumulated 4 points in accordance with the 2003 Attendance Policy.
Specifically,
4/8/03 Late 7:52  .5 pt
4/14/03 Late 8:02  .5 pt
4/15/03 Absent (3 hr VPT balance used) 1 pt
4/28/03 Absent  2 pts
All paid time has been exhausted until Dec 2003.

Issuing Manager  Dawn Trumps
Date  05/15/2003

**Employee Statement**
I agree with the Employer's Statement. [✓]
I disagree with the Employer's description of violation for the following reasons: [ ]

Employee Signature  _____
Date  _____

**Action to be taken**
| | |
|---|---|
| Warning | XX |
| Probation | |
| Suspension | |
| Termination | |
| Other | |

**Consequence should incident occur again:**
Additional incidents of absenteeism or lateness may result in disciplinary action up to and including termination of employment.

I have read this Employee Warning Notice and understand it.
Signature of Employee          Date _____
Manager Signature              Date 5/16/03

Routing                        Date _____
                               Date _____
                               Date 5/15/03

**EXHIBIT 23**

410 585 1813 TO 14108224412    P.03

# EMPLOYEE WARNING NOTICE

EXHIBIT

Bernard 39

| Employee | Ed Bernard | Date of Warning | 07/21/2003 |
|---|---|---|---|
| Department | Maintenance | Supervisor | John McNelly |

## Type of Violation

| Absenteeism | XX | Carelessness | | Insubordination | |
|---|---|---|---|---|---|
| Lateness/Early Quit | | Failure to Follow Instructions | | Violation of Safety Rules | |
| Rudeness to Employee/Members | | Willful Damage to Material/Equipment/Property | | Working on Personal Matters | |
| Unsatisfactory Work Quality | | Violations of Company Policies or Procedures | | Other | |

## Previous Warnings

| | ORAL | WRITTEN | DATE | BY WHOM |
|---|---|---|---|---|
| 1st Warning | | 1st Warning 4 pts | 05/15/2003 | Dawn Trumps |
| 2nd Warning | | | | |
| 3rd Warning | | | | |

**Employer Statement**
Date of Incident _____ Time _____
Employee currently has 4 points on his attendance record:
Absent 4/28/03  2 pts
Absent 7/9/03  2 pts

**Employee Statement**
I agree with the Employer's Statement.  ☐
I disagree with the Employer's description of violation for the following reasons:  ☑

Would not state reason
for disagreement. jsm

Issuing Manager  *Dawn Trumps*
Date  7/21/03

Employee Signature  *[signature]*
Date

## Action to be taken

| | | |
|---|---|---|
| Warning | XX | |
| Probation | | |
| Suspension | | |
| Termination | | |
| Other | | |

**Consequence should incident occur again:**
Additional incidents of absenteeism may result in the accumulation of points under the Attendance Policy and progressive discipline up to and including termination of employment.

I have read this Employee Warning Notice and understand it.
Signature of Employee
Manager Signature  *[signature] John H. McNelly*

Routing  *[signature]*

Date  7/24/03
Date  7/24/03

Date  7/24/03
Date
Date

(19

# EMPLOYEE WARNING NOTICE

Employee    Ed Bernard                        Date of Warning    07/21/2003

Department    Maintenance                    Supervisor    John McNally

## Type of Violation

| | | | | | |
|---|---|---|---|---|---|
| Absenteeism | XX | Carelessness | | Insubordination | |
| Lateness/Early Quit | | Failure to Follow Instructions | | Violation of Safety Rules | |
| Rudeness to Employees/Members | | Willful Damage to Material/Equipment/Property | | Working on Personal Matters | |
| Unsatisfactory Work Quality | | Violations of Company Policies or Procedures | | Other | |

## Previous Warnings

| | ORAL | WRITTEN | DATE | BY WHOM |
|---|---|---|---|---|
| 1st Warning | | 1st Warning 4 pts | 05/15/2003 | Dawn Trumps |
| 2nd Warning | | | | |
| 3rd Warning | | | | |

**Employer Statement**
Date of Incident _____ Time _____
Employee currently has 4 points on his
attendance record:
Absent 4/28/03  2 pts
Absent 7/9/03   2 pts

**Employee Statement**
I agree with the Employer's Statement.  ☐
I disagree with the Employer's description of  ☑
violation for the following reasons:
Would not state reason
for disagreement gen

Issuing Manager    *Dawn Trumps*
Date    7/21/03

Employee Signature    *[signature]*
Date

## Action to be taken

| | |
|---|---|
| Warning | XX |
| Probation | |
| Suspension | |
| Termination | |
| Other | |

**Consequence should incident occur again:**
Additional incidents of absenteeism may result in the
accumulation of points under the Attendance Policy and
progressive discipline up to and including termination of
employment.

I have read this Employee Warning Notice and understand it.
Signature of Employee    *[signature]*    Date 7/24/03
Manager Signature    *John McNally*    Date 7/24/03

Routing    *[signature]*    Date 7/24/03
                              Date
                              Date

EXHIBIT  P-2

**EXHIBIT 24**



# CALHOON MEBA ENGINEERING SCHOOL

27050 St. Michaels Road · Easton Maryland 21601 · (410) 822-9600 · Fax: (410) 822-7220



EXHIBIT

Bernard 11
8/21/03

October 11, 2002

Joyce Matthews
Director
Calhoon MEBA Engineering School
27050 Saint Michaels Road
Easton, MD  21601

On this date, I acknowledge having made two comments on October 4, 2002 when meeting with you and Dawn Trumps.  The first was a reference to the stress I was feeling when I said "this is what spawns people to go postal" and the second was when I said I felt like "climbing Will Helms like a tree and snapping his neck".

I acknowledge that both comments were inappropriate, made out of the emotion of the situation, and I have no intention of acting on such threats.  I have been counselled about this matter and agree to not making any other comments of a threatening nature.

Respectfully,


Ed Bernard


*As written by Dawn Trumps, I gave a copy of this letter to Ed Bernard on Friday, 10/11/02 and asked that he sign it.*

*JM*

October 11, 2002

Joyce Matthews
Director
Calhoon MEBA Engineering School
27050 Saint Michaels Road
Easton, MD 21601

On this date, I acknowledge having made two comments on October 4, 2002 when meeting with you and Dawn Trumps. The first was a reference to the stress I was feeling when I said "this is what spawns people to go postal" and the second was when I said I felt like "climbing Will Helms like a tree and snapping his neck".

I acknowledge that both comments were inappropriate, made out of the emotion of the situation, and I have no intention of acting on such threats. I have been counselled about this matter and agree to not making any other comments of a threatening nature.

Respectfully,


Ed Bernard

**EXHIBIT 25**

## *SECTION 6:  PAID TIME OFF*

VACATION

Vacation time is earned based upon the employment anniversary date for most employees. Faculty hired prior to 1999 earn their vacation each year on July 2nd. In order to be eligible for paid vacation time during a calendar year, the employee must be a full time employee and must have worked one or more years of continuous service. Vacation time is accrued for all periods of active employment; periods of leave will not count towards accrual of vacation time.

Schedule for Administrative, Maintenance, Housekeeping, and Kitchen Personnel:

| Years of Service | Amount of Vacation Time |
| --- | --- |
| 1 but less than 5 | 2 weeks |
| 5 but less than 10 | 3 weeks |
| 10 but less than 20 | 4 weeks |
| 20 or more | 5 weeks |

Schedule for Faculty:

| Years of Service | Amount of Vacation Time |
| --- | --- |
| 1 or more | 21 days |

Vacation pay shall be computed by multiplying the employee's straight time hourly rate by the number of vacation hours requested. Once vacation time is earned, it can be taken anytime during the following fifteen months; however, your immediate supervisor must approve in advance the particular time during which you take your vacation. While your supervisors will make every effort to approve all requests, they are required to keep their departments functioning. Therefore, it may be necessary for them to determine the specific time you can take your vacation. All vacation requests must be submitted to your supervisor for approval with at least fifteen days advance notice. The Director may grant requests for emergency vacation days without prior notice on a limited basis.

The purpose of a vacation is rest and relaxation so you are expected to take your vacation during the anniversary year it is granted. If you do not take your earned vacation within fifteen months from when it is granted, your right to that vacation is forfeited. You may not remain on the job and receive vacation pay in addition to regular pay. In limited situations, vacation extension requests may be granted by the Director and the Administrator if the CMES was unable to accommodate the employee's multiple vacation requests during the fifteen month period.

New employees with less than one year of service may choose to take accrued vacation time after six months of employment providing the supervisor has approved the request. Employees who choose to take advantage of this option must remember that the remaining allowance of vacation days will be awarded on the anniversary date and once used, no more vacation time will be allowed until the second anniversary.

<u>Employees are required to exhaust all forms of paid time in the form of variable paid time and vacation time before taking time off without pay.</u>

**EXHIBIT 26**

<u>Employees are required to exhaust all forms of paid time in the form of variable paid time and vacation time before taking time off without pay.</u>

In the event that an employee takes all available variable paid time and leaves employment before the end of the calendar year, those variable paid time hours which were paid but not yet fully earned will be withheld from the final paycheck.

If you should voluntarily terminate your employment after completing one year of continuous service, you will be paid for 50% of any accrued variable paid time hours providing you give at least ten working days notice of your intention to leave.

PAID HOLIDAYS

The CMES will observe eleven paid holidays each calendar year. At the beginning of each year, a calendar will be posted showing the specific dates each holiday will be observed. Providing the employee works the scheduled day prior to and the scheduled day after a holiday, he/she will receive eight hours of holiday pay for that day. In the event that an employee works on a holiday, he/she will receive regular pay for hours worked in addition to the eight hours of holiday pay. All holiday hours are counted toward the calculation for overtime payment.

1. New Year's Day
2. Martin Luther King's Birthday
3. President's Day
4. Memorial Day
5. Independence Day
6. Labor Day
7. Columbus Day
8. Veteran's Day
9. Thanksgiving Day
10. Day after Thanksgiving
11. Christmas Day

Eligibility for holiday pay requires that the employee work the last scheduled day before the holiday and the first scheduled day after the holiday. Employees cannot call in for a vacation day or variable paid time on the day before a holiday or on the day that we return from a holiday unless the five day advance notice requirement has been met. Managers pre-approve these requests on the basis of workflow and staffing requirements for each day. Any employee who does not request the day as a vacation day or variable paid time in advance and calls in on the same day will not be eligible for holiday pay unless documentation is provided necessitating the emergency vacation day or variable paid time.

FUNERAL LEAVE

Full-time employees are allowed paid funeral leave upon the death of an immediate family member for a period of no more than three working days to attend a funeral or other memorial service. For the purposes of this benefit, immediate family is defined as: parent, sibling, spouse, child, mother-in-law, father-in-law, brother-in-law, sister-in-law, son-in-law, daughter-in-law, grandparent, or grandchild. The "step" relationship will also be recognized as immediate family in the case of parent, child, or sibling.

**EXHIBIT 27**

## Jennifer Stamm-Jones

| | |
|---|---|
| **From:** | Dawn Trumps |
| **Sent:** | Monday, November 25, 2002 1:09 PM |
| **To:** | Jennifer Stamm-Jones |
| **Cc:** | 'jmatthews@mebaschool.org' |
| **Subject:** | Ed Bernard's payroll |

Jenni:

After speaking with Joyce Matthews this morning, it was determined that we paid Ed Bernard incorrectly for the week ending 11/16/02. Ed was absent on 11/12, 11/14, and 11/15 of that week. Holiday pay for 11/11 should be rescinded until he provides us with medical documentation as per our policy. For the remaining days, he will not be allowed to take vacation days that have not been posted.

Vacation will be advanced with the Director's approval providing the employee has given 15 days notice of their intention to take vacation time and the requested time off is within 90 days of the employee's posting date. In the case of unscheduled absences, we will not "force" or advance vacation time.

Please make the necessary adjustments with the next payroll processing for paydate 12/6/02. I will notify Tracy in writing regarding this policy clarification.

Thanks,
Dawn

NAME *Bernard, Edward*

DATE **NOV 16 2002** NO.

| EXTRA TIME | | | | REGULAR TIME | | | |
|---|---|---|---|---|---|---|---|
| | | | **1st Day** | IN OUT IN OUT IN OUT | | | |
| | | H | **2nd Day** | IN OUT IN OUT IN OUT | 11 18 | sick | |
| | | ✓ | **3rd Day** | IN OUT IN OUT IN OUT | 11 18 | sick | |
| | | ✓ | **4th Day** | IN OUT IN OUT IN OUT | 7 27 8 4 01 | TH TH | |
| | | | **5th Day** | IN OUT IN OUT IN OUT | 11 15 | sick call no in | |
| | | | **6th Day** | IN OUT IN OUT IN OUT | | | |
| | | | **7th Day** | IN OUT IN OUT IN OUT | | | |

Received from Ed Bernard after not reporting to work on Fri. 11/15/02 and not calling into Bob Shafer or Mark D'Arcy to advise of doctors appt.

Regular Hrs.
Extra Hrs.
F.I.C.A.
FED. WITH. TAX
STATE WITH. TAX
STATE DIS. BEN.
STATE UNEMP.
CITY W.T.
OTHER

Rate
Rate
Total
Total
Total

NET WAGES

*See Dawn*

8 Reg.
24 Vac.

| TOTAL | | | | TOTAL | | | |

Time, Rate, Pay as shown are correct.

Received Payment *H Malfa*

9652       adams

EASTON SCHOOL EMPLOYEES
MAINTENANCE & HOUSEKEEPING

NOV 2 2 2002

PAYROLL DATE:

| MAINTENANCE | ADJUSTMENTS | W/E: 11/9 | W/E: 11/16 | TOTAL TIME |
|---|---|---|---|---|
| BERNARD, EDWARD | | 40 | 8  8  24V  12,13,16 | 56R  24V |
| ERDELL, CONNIE | | 39  1N/P  .50K  (.50)5(.50)6 | 32  8  4OT | 19R  4OT  .50K  1N/P |
| FREEMAN, VERNON | | 40  6.25OT | 32  8  8.50OT | 80R  14.25OT |
| FREEMAN, WILLIAM | | 40 V | 32V  8H | 8R  72V  ALREADY PAID |
| HELMS, WILLIAM E. | | 40 | 31.15  8  .25N/P .25K 8.25OT  15 | 19.15R  8.25OT  .25K  .25N/P |
| LEE, ROBERT | | 24  16V  67 | 24.50  8  2.50N/P  15 | 41.50R  16V  2.50N/P |
| MILLER, CARROLL | | 40 | 32  8 | 80R |
| OUTTEN, LEWIS | | 40 | 39.15  8  2.25N/P  15 | 11.15R  2.25N/P |
| SHAFER, ROBERT | | 40 | 31.50  8  .6B 9K=5.50  14 | 19.50R  .50B  COMP EARNED = 5.50 |
| SMITH, T. SCOTT | | 31  9P  (1)5(8)8 | 32  8  9OT | 11R  9OT  9P |
| WEAVER, ROBERT | | 40 | 32  8 | 80R |
| YOUNG, KEVIN | | 40  5OT | 32  8  3.25OT | 80R  8.25OT |
| **HOUSEKEEPING** | | | | |
| ALBRIGHT, BONNIE | CORR. FR. 11/8 31.50  8B  .50OR-.50P(9/21) 5 | 31  8  5.50B 2.25(.50=2) 11  14  14 | 64.50R(.50)=65R  2.25P-.50P=2P  13.50B  COMP EARNED = 2 |
| BALL, WILLA | | 40 | 32  8 | 80R |
| DALE, CYNTHIA | | 40 | 32  8 | 80R |
| HENRY, GENEVIEVE | | 40 | 32  8 | 80R |
| KENNEDY, KATHLEEN | | 40 | 31.50  8  .50 4P.50K  15 | 19.50R  .50K  .50N/P |
| LOFLAND, BARRY | CORR. FR. 11/8 40  -.50R +.50N/P(9/16)  +.50K-.50P | 32  8  .75OT | 80R(.50)=19.50R  .75OT(.50)=.25OT  (.50K)(.50N/P) |
| SAPP, DARLENE | | 40 | 32  8 | 80R |
| SCHOMBORG, ALLISON | | 39.15  .25N/P  1 | 32  8 | 19.15R  .25N/P |
| WILHELM, MARIANNE | | 40 | 32  8 | 80R |

**Jennifer Stamm-Jones**

| | |
|---|---|
| **From:** | Dawn Trumps |
| **Sent:** | Monday, November 25, 2002 1:09 PM |
| **To:** | Jennifer Stamm-Jones |
| **Cc:** | 'jmatthews@mebaschool.org' |
| **Subject:** | Ed Bernard's payroll |

Jenni:

After speaking with Joyce Matthews this morning, it was determined that we paid Ed Bernard incorrectly for the week ending 11/16/02.  Ed was absent on 11/12, 11/14, and 11/15 of that week.  Holiday pay for 11/11 should be rescinded until he provides us with medical documentation as per our policy.  For the remaining days, he will not be allowed to take vacation days that have not been posted.

Vacation will be advanced with the Director's approval providing the employee has given 15 days notice of their intention to take vacation time and the requested time off is within 90 days of the employee's posting date.  In the case of unscheduled absences, we will not "force" or advance vacation time.

Please make the necessary adjustments with the next payroll processing for paydate 12/6/02.  I will notify Tracy in writing regarding this policy clarification.

Thanks,
Dawn

**EXHIBIT 28**

EXHIBIT

BerNARD 19
2/21/03

**Dawn Trumps**

| | |
|---|---|
| **From:** | Joyce Matthews [jmatthews@mebaschool.org] |
| **Sent:** | Monday, December 09, 2002 2:55 PM |
| **To:** | DTrumps@mebaplans.org; "Jennifer Stamm-Jones"@sapporo.toad.net |
| **Cc:** | Tracy Pinheiro (E-mail); Mark D'Arcy (E-mail) |
| **Subject:** | RE: Ed Bernard's payroll |

Jenni and Dawn:

I apologize in advance for all the confusion and additional work that this matter is causing, but I am attempting to provide fair and equal treatment for all employees.  We need to recalculate Ed Bernard's payment once again due to the following circumstances:

1. Reinstatement holiday payment for 11/11/02 upon receipt of emergency room receipt from Ed Bernard as submitted to Mark D'Arcy.

2. Allow the use of vacation time to be posted 12/10/02 for past absences due to a passage in the handbook on page 28 atating that " Vacation time is earned based upon the employment anniversary date ..." Ed stated that even though he received statements from payroll listing his posting date as 12/10/02, he thought his vacation was available to him on his employment anniversary date (11/13/02)as stated in the handbook. Based on that fact he said he had already used that vacation money for Christmas expenses and now needed his regular pay for rent, etc.
I do not want any employee to suffer hardship due to a misinterpretation of the rules, and have thus granted approval for the following days to be covered by vacation:
        Tuesday 11/12/02, Wednesday 11/13/02, and Friday 11/15/02.

3. Credit November 25, 2002 (7.5 hours WOP) as the "XB" day each employee has been granted.

Finally, I am hoping you can arrange to cut a check for the above amounts and send it to the school tomorrow.

I realize that I am asking alot, but I do not want an employee who is missing time due to sickness to be penalized unjustly or as a result of the sickness to be subjected to financial distress. Thus giving the benefit of the doubt seems fair.

Again I appreciate your help in handling the above and regret the additional work it has caused you.

If you have any questions, please contact me.

Best regards,

Joyce


-----Original Message-----
From: Dawn Trumps [mailto:DTrumps@mebaplans.org]
Sent: Monday, November 25, 2002 1:09 PM
To: "Jennifer Stamm-Jones"@sapporo.toad.net
Cc: jmatthews@mebaschool.org
Subject: Ed Bernard's payroll


Jenni:

1

After speaking with Joyce Matthews this morning, it was determined that we paid Ed Bernard incorrectly for the week ending 11/16/02.  Ed was absent on 11/12, 11/14, and 11/15 of that week.  Holiday pay for 11/11 should be rescinded until he provides us with medical documentation as per our policy. For the remaining days, he will not be allowed to take vacation days that have not been posted.

Vacation will be advanced with the Director's approval providing the employee has given 15 days notice of their intention to take vacation time and the requested time off is within 90 days of the employee's posting date. In the case of unscheduled absences, we will not "force" or advance vacation time.

Please make the necessary adjustments with the next payroll processing for paydate 12/6/02.  I will notify Tracy in writing regarding this policy clarification.

Thanks,
Dawn

YEAR: 2002

DEPT. 200138
FILE# 1325
NAME Bernard, Edward G., Jr.
SS# 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
HIRE DATE 11/13/2000
TERM DATE
TITLE Maintenance

### PAY RATE

| | EFF. | P/R | | |
|---|---|---|---|---|
| ANNUAL | DATE | DATE | GROSS | HOURLY |
| 22,714 | 1/1/01 | 8/3/01 | | 10.9200 |
| 23,623 | 7/1/02 | 8/2/02 | | 11.3512 |

### VACATION (DAYS)

NO. OF DAYS 10    ACCRUAL DATE 12/10

| P/R DATE | ACCRUED | DATE(S) USED | PAID | BALANCE |
|---|---|---|---|---|
| BALANCE FORWARD USE BY: | | | | 7 |
| 1/18/02 | | 1/2 | 1 | 6 |
| 5/10/02 | | 4/24 | 1 | 5 |
| 6/24/02 | | 5/10, 5/13 | 2 | 3 |
| 6/11/02 | | 5/29 | 1 | 2 |
| 7/19/02 | | 7/1 | 1 | 1 |
| 8/30/02 | | 8/20 | 1 | 0 |
| 11/8/02 | | 10/24 | 1 | (1) |
| 11/22/02 | | 11/12, 13, 15 | 3 | (4) |
| 12/6/02 | Reversal 11/12 4/13 11/15 | | -3 | (1) |
| 12/20/02 | #2 Reversal 11/12, 11/13 11/15 | | 3 | (4) |
| 12/20/02 | 10 | | | 6 |
| 1/3/03 | | 12/26, 27 | 2 | 4 |

### SICK LEAVE (HOURS)

| PAYROLL | DATE(S) | | | |
|---|---|---|---|---|
| DATE | USED | | PAID | BALANCE |
| JAN. 1, 2002 | | | | 48.00 |
| 1/18/02 | 1/10-11 | | 16.00 | 32.00 |
| 2/15/02 | (3.50) 1/29 (8) 2/5 | | 11.50 | 20.50 |
| 5/15/02 | 2/26 | | 3.00 | 17.50 |
| 5/24/02 | (8) 3/8 (4.5) 3/19 | | 12.50 | 5.00 |
| 4/12/02 | 4/4 | | 3.50 | 1.50 |
| 4/26/02 | * 4/4 | | .25 | 1.25 |
| 5/10/02 | CHANGED TO VARIABLE | | +11.00 | 12.25 |
| 5/24/02 | 5/17 | | .25 | 12.00 |
| 6/7/02 | 5/20 | | 1.75 | 9.75 |
| 6/21/02 | 6/14 | | 2.00 | 7.75 |
| 7/6/02 | 6/19 | | 1.50 | 6.25 |
| 7/19/02 | (1.25) 7/2 (.15) 7/5 | | 2.00 | 4.25 |
| 8/2/02 | (.25) 7/17 (4) 7/23 | | 4.25 | 0 |

### UNPAID TIME (HOURS)

| P/R DATE | DATE(S) USED | TYPE | HOURS |
|---|---|---|---|
| 4/12/02 | 3/25 | A | .50 |
| 8/2/02 | 7/23 | A | 1.50 |
| 8/30/02 | (1) 8/12 (.25) 8/16 | A | 1.25 |
| 9/13/02 | 9/4 | A | 2.00 |
| 9/27/02 | (8) 9/9 (8) 9/17 | A | 16.00 |
| 10/11/02 | 9/26 | A | 8.00 |
| 12/6/02 | (8) 11/11 (8) 11/12 (8) 11/13 (8) 11/15 | A | 32.00 * |
| 12/6/02 | (1.25) 11/19 (4) 11/22 (7.50) 11/25 | A | 12.75 * |
| * 12/20/02 | (-8) 11/11 (-8) 11/12 (-8) 11/13 (-8) 11/15 | A | -32.00 * |
| 12/20/02 | (-7.50) 11/25 | A | -7.50 * |

### PERSONAL TIME (HOURS)

| P/R DATE | DATE(S) USED | PAID | BALANCE |
|---|---|---|---|
| JAN. 1, 2002 | | | 24.00 |
| 3/15/02 | 3/8 | 8.00 | 16.00 |
| 4/12/02 | 3/25 | 5.00 | 11.00 |
| 5/10/02 | CHANGED TO VARIABLE | -11.00 | 0 |

### COMP TIME (HOURS)

| PAYROLL | DATE(S) USED/ | HRS. | HOURS | |
|---|---|---|---|---|
| DATE | ACCRUED | ACCR | USED | BALANCE |
| Balance Forward | | | | |

### COMMENTS

| MEDICAL BENEFITS: | YES |
|---|---|
| PENSION PLAN: | STAFF |

EASTON SCHOOL EMPLOYEES
MAINTENANCE & HOUSEKEEPING

**DEC - 6 2002**

*(handwritten note top right):* W/MONTREAL CHECK DATED 12/10/02 / PER P/R REGISTER DT 12/20/02. / PER DT E, JM.

| MAINTENANCE | PAYROLL DATE: ADJUSTMENTS | W/E: 11 23 | | W/E: 11 30 | | TOTAL TIME |
|---|---|---|---|---|---|---|
| BERNARD, EDWARD | CORR. PR W23R -8R -24V +32NIP | 34.15  5.76NIP 16 (1.25)14 (1)22 | | 16 16.60  1.60NIP 16 | | W/MONTREAL 61.75 -8 = 53.75R -24V / R/PR P/R 12.16R 50 = 44.15R 16 |
| ERDELL, CONNIE | | 34.25  .15NIP 20 | | 16 24 | | 19.16R .76NIP |
| FREEMAN, VERNON | | 32  8V 32 | | 16 24 | | 72R  8V |
| FREEMAN, WILLIAM | | 40V 16.22  already paid w/ 14 8V | | 16 16  8V 26 | | 72R  8V |
| HELMS, WILLIAM E. | | 40 | | 16 24 | | 80R |
| LEE, ROBERT | | 40 | | 16 24 | | 80R |
| MILLER, CARROLL | | 40 | | 16 24 | | 80R |
| OUTTEN, LEWIS | | 34  NIP 20 | | 16 13.60  .60NIP 25 | | 18.60 R  1.60 NIP |
| SHAFER, ROBERT | | 40  9/6 = -.60/20 1/22 | | 16 24 | | 80R  COMP EARNED = 1.60 |
| SMITH, T. SCOTT | | 34.50  .60P.60K 1or 21 | | 16 24 | | 19.60R 1or .50P .60K |
| WEAVER, ROBERT | | 40 | | 16 24 | | 80R |
| YOUNG, KEVIN | | 40 | | 16 24 | | 80R |
| **HOUSEKEEPING** | | | | | | |
| ALBRIGHT, BONNIE | | 31.50 .60B 9/6=-7/19 7/21 (7.60)20 :60/ 22 | 1.25 21 | 16 13.60  .60B 9/6=-1.25 26 | | 79R  5B  COMP EARNED = 7 |
| BALL, WILLA | CORR. PER W/W 9/25 -8V +8P | 40 | | 16 24 | | 80R  (-8V)  (+8P) ✓ |
| DALE, CYNTHIA | | 40 | | 16 24 | | 80R |
| HENRY, GENEVIEVE | | 40 | | 16 24 | | 80R |
| KENNEDY, KATHLEEN | | 36.50  3.50NIP 20 | | 16 24 | | 76.50R  3.50NIP |
| LOFLAND, BARRY | | 34.15 .25NP.25K 3.75oT 22 | | 16 24  2.25oT | | 19.15R 6oT .25K .25NIP |
| SAPP, DARLENE | | 40 | | 16 24 | | 80R |
| SCHOMBORG, ALLISON | | 32  8NIP 18 | | 16 24 | | 72R  8NIP |
| WILHELM, MARIANNE | | 40 | | 16 24 | | 80R |

**EXHIBIT 29**

Edward Bernard                        This a confidential personnel record

**04/03/03**
I sought out Ed and found him at the Perry Hall Boat Shed. I explained that I thought it was clear that I had expected him to initiate the rescheduling of the boat readiness meeting that he had canceled earlier in the week. We agreed to meet today at 12:30pm.

My overall assessment of Ed would include:
Ed is able talk knowledgeably about engine mechanics but I have not yet seen the results of his efforts, so I have reserved judgement of his engine mechanical abilities until I am able to do so. Ed chooses to have very little interaction with his peers, supervisor or me. He will work with other mechanics only if directly instructed to do, but there is no evidence of social interaction or camaraderie that might be expected from a maintenance group this size. I have found Ed to be reluctant to provide information or insights relevant to his job or responsibilities, unless specifically asked to do so. It is also my impression that Ed will knowingly withhold information that is being sought unless specifically asked the right question.

**04/01/03**
I saw Ed around mid morning and asked him about the solenoid issue. He said it was replaced and the engine turned over ok. I reminded him that we still needed to meet to review the boat readiness.

**03/01/03**
Ed mentioned to me that he was going to be working on the starter solenoid for the ketch engine and may or may not be finished with it today. I told him that the repair of the solenoid could take precedence over our scheduled meeting on Tuesday morning to review the boat readiness and that if he would rather meet later that day it would be ok with me.

**03/25/03**
I met with Ed (Bob S. was sick and did not come in. I reviewed the information in the Daily Log book. It was very broad, sketchy and not very useful. I explained to Ed again what I expected. The Boat Readiness Reports were also completed unsatisfactorily. The information was incomplete and inaccurate. It may have been an honest misunderstanding on Ed's, but it has been another one of many. I asked that he take the time to complete the reports and return them to me by noon today. As od\f the end of the day I had not received them.
I instructed Ed to prepare the Ketch to run the engine on Thursday to test the engine and lines for damage. I explained that I wanted to be present when we run the engine. jhm

**03/20/03**
After asking Bob twice yesterday for the reports, I received them this morning. One of the solar sailboat ones was not completed. I returned them to Bob and received them back at the end of the day. Also mentioned to Bob that I have seen no evidence that the canvas to the Lifeboat had been emptied, in fact there is a great deal of evidence to indicate that it has not.

**03/18/03**
Met with Ed and Bob to review progress on the boats. Ed said that he had misplaced the notebook I had given him to log his daily work on the boats. I gave Ed new Boat Readiness & Condition Reports for each boat that I wanted him to submit each week to reflect the progress made on each boat. We started to complete them but ran out of time. I asked Ed to finish them and turn them in at the end of the day. Ed failed to turn in the reports.

**03/13/03**              11:00am
Ed returned at 11:00am and I decided to walk with Ed around the campus rather meet in the office, hoping that it would be more relaxed and less confrontational environment. During our conversation I explained that I tried to use the instance of the cardboard box as an example of the mechanics providing feedback if a task cannot be performed as requested. He indicated that he felt the way in which I handled the situation made him feel belittled and spoken down to. I told him that way not my intention and I sincerely apologized for anything that I may have done or said that gave him that impression. Despite my best efforts to explain that I felt I had an obligation and responsibility to discuss job performance issues with

Jhm.staff. bernard comments                              page: 1 of 3

Edward Bernard                  This a confidential personnel record

every mechanic candidly, I do not think that Ed accepted this as the reason for my earlier comments about the cardboard box. In my opinion his conversation rambled with vague comments about letting other people (or a group of people) decide if he was not being treating fairly, past problems at the school, free speech and equality. He talked about how if you tie a dog up and kick it every day, do not be surprised if the dog bit you if you got to close. Even if you later untied the dog and tried to pet it, it would always remember the earlier kicking and be wary of you. I could not follow much of his conversation but could not get Ed to clarify the specifics of what he was referring to. I sensed that he feels that the issue of the cardboard box was insignificant and was offended that I would even bring it up. He said maybe we should go to Joyce's office right now and she could provide the background and we could finish this now. I said that I did not think that the it was appropriate for us to go to Joyce's office at this moment. I felt that I had not been very effective in communicating with Ed my concerns or expectations and did not understand the context of the majority of his comments nor what they had to do with his failure to perform his
When we returned to the maintenance area we greed to try to be more open in our communication with each other and shook hands.


03/13/03          10:00am (app)
At approximately 10:00am Ed cam back to see me to discuss an issue with the boats. Bob Shafer was present. I asked Ed to sit down and join us as I wanted to discuss several issues. After we finished discussing the boat item, Ed started to rise to leave. I reminded him that I wanted to discuss some other issues. I asked to help me understand the comment that he made earlier in reference to his attorney. He started to get up and leave and asked him to stay. When I repeated my request he said something about "everything coming out in the wash" and again got up to leave. I again asked him to stay so we could continue. I tried to explain that I just wanted to understand the situation and why he felt that he needed to contact an attorney. He told me that the reason he wanted to contact his attorney had nothing to do with his work or his job performance and that he did not want to discuss it. He again rose from the chair and headed for the door. I asked him to stay and mentioned that his actions could be perceived as insubordination and that I would like him to understand that now so if he decided to leave, he would be aware of how it may be perceived. He returned to the table but would not sit down. When I asked him to sit down he stated that his knee was "locking up" and he would uncomfortable sitting. I told him that was ok, go stretch his knee and come back at 11:00am. jhm


03/13/03          8:00am (app.)
On Tuesday afternoon, 03/11, I had asked Ed to pick up a large (3'x8') cardboard box from the instructor's parking lot outside the reefer lab and take it to the dumpster. He said he would. Later that evening I noticed that the box had not been removed, so I took it over to the dumpster.
On Thursday morning (app. 8:00am) Ed came to see me about changing the oil in the vehicles. I asked Ed why he had not picked it up. He said he could not find it. I explained that it was a very large box and was easily visible and I would have expected him to contact me if he could not complete the task and I would have helped him locate it. He constantly interrupted me as I was explaining my position. I felt that Ed was being arguementative. I asked him to sit down, let me finish and I would give him the opportunity to say whatever he wanted. I tried to explain that it was my expectation that if he was given a task and could not complete it for any reason he should have let me know. I wanted him to understand that my concern was not about this specific event, but I expected feedback from the staff if we were unable to meet expectation or complete tasks as assigned. I wanted to use this fairly minor incident to illustrate my expectations overall. When I was finished I asked Ed if he had anything he wanted to say. He stated he thought I was treating like a child and at that point he got up and began to walk out of the office. On the way out he said something to the effect that he saw how this was going and he was going to have to call Jean (I am not positive that heard the name correctly). When I asked who this person was he said it was his attorney. He was out the door before I had an opportunity to say anything else. jhm


03/11/03


Jhm.staff. bernard  comments                                        page: 2 of 3

Edward Bernard                    This a confidential personnel record

Met with Bob and Ed to review progress of work on Boats. I updated my notes. Am not feeling very confident that progress is being made fast enough to get boats in the water by May 1.        jhm

03/05/03
Saw Ed at the docks, went over and discussed the pulleys and line situation. He did not seem to be at all concerned about any of the items we discussed about the dock the day before.

03/04/03
Met with Ed and Bob to review the status of the boats. Updated notes from 02/27/03. Asked Ed about the docks, pulleys, lines and Life Boat. Noted that it appeared to me that some of the pulleys were missing and the lines and pulleys not correctly matched. Also noted that the Lifeboat canvas is full of water and should be emptied. We also discussed painting the metal structure, installing a safety chain at the open area under the Life Boat and securing the gate to the upper deck.

02/20/03
Met with Ed to discuss what I witnessed yesterday. He explained that his remarks were a result of frustration. Because he felt that he was being assigned work that could / should have been more appropriately assigned to others and that this is a continuation of a long-standing trend. He feels that he is routinely assigned "bull work" disproportionally or asked to clean up behind other mechanics . I stated that I was concerned about the inappropriate behavior I witnessed and would insist that we treat each other with respect. I would also review how tasks are assigned with regards to the issues Ed raised. jhm

02/19/03
Witnessed a heated verbal exchange between Ed and Bob Shafer by the Annex generator about snow removal. Other staff were present. Neither conducted themselves very appropriately. I counseled both Ed and Bob later about their behavior. Two issues: inappropriate behavior by both, (Ed's initial remarks and Bob's response) and a better method to resolve and distribute work issues. jhm