IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDWARD G. BERNARD, JR.              :
                                    :
    Plaintiff,                      :    Case No. AMD-03-CV-531
                                    :
v.                                  :
                                    :
CALHOON MEBA ENGINEERING SCHOOL     :
                                    :
    Defendant.                      :

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Jean D. Meta, Esquire
Law Office of Jean D. Meta
133 Defense Highway, Suite 111
Annapolis, Maryland 21401
(410) 224-0755

*Counsel for Plaintiff*

October 27, 2003

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................................

**I. INTRODUCTION** ............................................................................................................
    A. Summary of Argument ..............................................................................................
    B. Procedural History ................................................................................................. 1

**II. STATEMENT OF FACTS** ........................................................................................... 2

**III. ARGUMENT** ................................................................................................................ 2
    A. Legal Standard for Entry of Summary Judgment ................................................. 19

    B. Plaintiff Has Established a Case of Racially Hostile Work Environment ......... 20

        1. Taken As A Whole, Mr. Helm's Remarks Were Sufficiently Severe of Persuasive So As To Constitute A Finding Of A Racially Hostile Work Environment ................................... 20

        2. CMES is Liable Because Management Failed To Take Effective Remedial Action when Advised of the Racially Hostile Work Environment at the School ........................................ 21

## TABLE OF AUTHORITIES

**Cases**

Amivmokri v. Baltimore Gas and Electric, 60 F.3d 1126, (4th Cir., 1995)

Anderson v. Liberty Lobby, Inc., 474 U.S. 242, 91 L.Ed 2d 202, 106 S.Ct. 2505 (1986)

Bailey v. Binyon, 583 F.Supp. 923 (N.D.Ill. 1984)

Brown v. Perry, 184 F.3d 388, 395 (4th Cir., 1999)

Causey v. Balog, 162 F.3d 795 (4th Cir., 1998)

Celotex Corp v. Catrett, 477 U.S. 317, 91 L.Ed 2d 265, 106 S. Ct. 2548 (1986)

Harris v. Forklift Systems., Inc., 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed. 2d 295 (1993)

Lissau v. Southern Food Service, Inc., 159 F.3d 177 (4th Cir., 2003)

King v. Rumsfeld, 328 F.3d 145 (4th Cir., 2003)

Mullen v. Princess Anne Volunteer Fire, Inc., 853 F.2d 1130 (4th Cir., 1988)

Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668 (7th Cir., 1993)

Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir., 2001)

I.   **INTRODUCTION**

Plaintiff, Edward G. Bernard, Jr. (herein after "Plaintiff" or "Mr. Bernard"), hereby submits this Memorandum of Points and Authorities In Support of Plaintiff's Opposition to Defendant's Motion For Summary Judgment on both counts of the Complaint of Discrimination.

   **A.  Summary of Argument**

Plaintiff has established a prima facie case of hostile work environment against Defendant Calhoon MEBA Engineering School (hereinafter "Defendant" or "CMES") sufficient to overcome summary judgment in this case. The remarks of Mr. Bernard's co-worker are of such a pervasive and severe nature that they constitute discrimination *per se* and any reasonable person would consider them to be hostile and abusive. In addition, the acts of CMES in investigating and "counseling" the co-worker did not constitute effective remedial action as the comments continued and Mr. Bernard continued to experience a racially hostile work environment.

   **B.  Procedural History**

A Complaint of Discrimination was filed by the Plaintiff on February 26, 2003. Count I of the Complaint alleges CMES subjected Mr. Bernard to a hostile working environment in violation of Title VII of the Civil Rights Act of 1964. Count II alleges Retaliation because the filing of charges of discrimination with the Equal Employment Opportunity Commission resulted in unjustified payroll deductions, demotion, excessive warnings and other acts of retaliation.

The parties exchanged documents. Plaintiff took the deposition of Dawn Trumps, the Human Resources Manager for CMES, and CMES took the deposition of Mr. Bernard.

II.     STATEMENT OF FACTS

Mr. Bernard was hired by the Defendant on November 13, 2000. (Complaint ¶ 8) Mr. Bernard applied for and was hired in the position of maintenance mechanic.

Mr. Bernard was told the job would involve taking care of the trucks, tractors and mowers, and the engines on two boats. (Deposition of Edward Bernard (herein after "Bernard") pp. 17-18). Mr. Bernard was rarely asked to do other tasks.

The MEBA (Marine Engineers Beneficial Association) Benefit Plans provide training at CMES for MEBA union members. CMES is managed by the MEBA Benefit Plans. The MEBA Benefit Plans are governed by a board of trustees consisting of elected union officials and shipping company owners or representatives. (Deposition of Dawn Trumps, herein after "Trumps," pp. 5-6).

At the time Mr. Bernard was employed by CMES there were thirty-five non-academic hourly support staff, eleven of whom were African-American. There are no African-Americans in supervising positions at CMES (Trumps pp. 14-16).

Ms. Dawn Trumps, Human Resources Manager, is employed by MEBA Benefit Plans and oversees human resources issues at the school (Trumps pp. 6-9).

Ms. Trumps investigates complaints of racial discrimination as they come to her attention, whether from the employee, a supervisor or the Director of the School (Trumps pp. 39-40). Ms. Trumps conducted training about changes to the harassment in the workplace policy in February, 2002 for school employees (Trumps p. 23). However, Ms. Trumps has never conducted any formalized training at CMES for supervisors on how to address claims of harassment by CMES personnel (Trumps p. 37).

2

On about October 23, 2002, Mr. Bernard filed a charge with EEOC alleging that, shortly after he began working for CMES in November, 2000, he had been subjected to harassment from a co-worker, Will Helms, in the form of racially derogatory comments and jokes. His charge also alleges that, despite complaining to management and Human Resources, the harassment continued and created a hostile environment.

On November 27, 2002, the EEOC determined that it was unable to conclude that the information obtained in its investigation establishes violations of Title VII. However, this finding does not certify that the respondent is in compliance with the statutes.

Just after he was hired in November, 2000, Mr. Helms told Mr. Bernard "You know what Ed, you're all right for a black boy." (Bernard, p. 79).

On another occasion, Mr. Helms approached Mr. Bernard and said "Bend over, I need me a black boy today." (Bernard, p. 137).

On another occasion, while in the presence of other CMES employees, Mr. Helms approached Mr. Bernard and asked him "do you remember your first blow job, what did it taste like?" (Complaint ¶13).

On another occasion, Mr. Helms approached Mr. Bernard and asked him, "how do you get a black man out of a tree, you cut the rope." (Complaint ¶14).

When an individual has a personnel complaint, they are directed to go to their immediate supervisor first (Trumps, p. 36).

On September 3, 2002, Mr. Bernard told his supervisor, Bob Shafer, that he was "tired" of Mr. Helms' making racial remarks. Prior to this September 3, 2002 conversation, Mr. Bernard

had complained to Mr. Shafer about how Mr. Helms was talking about him behind his back and criticizing his work, and also about his jokes (Bernard, p.64).

After learning via voice mail from Mr. Shafer on September 3, 2002 that Mr. Bernard had complained of race discrimination, Ms. Trumps arranged to be at the School the next day to address Mr. Bernard's complaint. In recounting Mr. Helms' behavior to her, Mr. Bernard related only the August 30 comment. He acknowledged that Mr. Shafer had had Helms apologize to him and shake his hand, but told Ms. Trumps that he was not satisfied with that alone.

Ms. Trumps told Mr. Bernard that Mr. Helms' August 30 remark was inappropriate, that the School did not tolerate racial remarks, and that his fears that Mr. Helms could get him fired were unfounded. She informed Mr. Bernard that she was going to speak to Helms and take further action if anything else occurred.

Ms. Trumps also met with Mr. Helms on September 4 and obtained his assurance that the racial joking about which Mr. Bernard had complained would never happen again. She nonetheless told him that the incident would be documented and become a permanent part of his file, and warned him that further incidents would lead to further discipline.
Mr. Bernard also said that a co-worker had commented on Mr. Bernard's having a white girlfriend by saying in passing "Ed, you like those white women." (Bernard, p. 152.)

On the afternoon of September 6, the School's Director, Ms. Matthews met with the rest of the Maintenance Department, and reminded them about respecting one another and not participating in rumors, abusive language, name-calling, racial or sexual harassment or any type of discrimination. Mr. Bernard asked to be excused from this meeting, but Ms. Matthews met with him personally and assured him that racially offensive language would not be tolerated and

4

that he should report any such behavior directly to her or Ms. Trumps.

Ms. Trumps and Ms. Matthews had another meeting with Mr. Helms, as well as Mr. Bernard, on October 10 because of a remark that Helms had supposedly made to another African-American employee and that Mr. Bernard had heard about second-hand and reported. The meeting with Mr. Bernard was also intended to address certain threatening statements he had made regarding Mr. Helms in an October 4 meeting with Ms. Trumps and Ms. Matthews.

After their first conversation on September 4, 2003, Ms. Trumps held several follow-up meetings with Mr. Bernard in October, and subsequently, in an effort to ensure that there was no recurrence of the offensive remarks. Ms. Matthews, the Director of CMES, also held follow-up meetings with Mr. Bernard. No further racial comments were ever made to Mr. Bernard, except for Mr. Helms' repetition of the "Ed, excuse my French" remark in July, 2003. Mr. Bernard does not claim that he reported this comment to anyone at the School1, and he agreed that he neither heard nor reported any additional remarks.

Other than "counseling" Mr. Helms and placed notes in the files of Mr. Bernard and Mr. Helms, there was no other form of discipline imposed on Mr. Helms.

## III. ARGUMENT

### A. Legal Standard for Entry of Summary Judgment

Summary judgment is properly granted when genuine and disputed issues of material fact remain and the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp v. Catrett, 477 U.S. 317, 323, 91 L.Ed 2d 265, 106 S. Ct. 2548 (1986); Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir., 2001). The non-moving party's evidence is to be taken as true and all inferences are to be drawn most favorably to that party. Anderson v.

Liberty Lobby, Inc, 474 U.S. 242, 248, 91 L.Ed 2d 202, 106 S. ct. 2505 (1986) A disputed fact presents a genuine issue where the evidence is such that a reasonable jury could find for the non-moving party. Id.

In the present case, the Plaintiff, Edward Bernard, Jr., has established that there is a genuine dispute as to the material facts of the case. Therefore, the entry of summary judgment on behalf of the Defendant, Calhoon MEBA Engineering School, is inappropriate with respect to Count I (Race Discrimination) and Count II (Retaliation) of the Complaint.

### B. **Plaintiff Has Established A Case of Racially Hostile Work Environment**

To survive summary judgment on his claims of a racially hostile work environment, Mr. Bernard must demonstrate that the harassment he suffered: (1) was unwelcome; (2) was based on race; and (3) was sufficiently severe or persuasive so as to alter the conditions of his employment and create an abusive atmosphere. Mr. Bernard must also demonstrate that there is some basis for imposing liability on the employer. Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183-84 (4th Cir., 2001). See Causey v. Baloy, 162 F.3d 795, 801 (4th Cir., 1998).

In its Motion, the Defendant conceded that elements one and two exist with respect to Mr. Bernard in that the comments made by Mr. Helms were unwelcome and are based on his race.

    1.    **Taken As A Whole, Mr. Helm's Remarks Were Sufficiently Severe And Persuasive So As To Constitute A Finding Of A Racially Hostile Work Environment**

Whether harassment is sufficiently severe or pervasive to create an abusive work environment is "quintessentially a question of fact." Amivmokri v. Baltimore Gas and Electric, 60F.3d 1126, (4th Cir., 1995) and can only be determined by examining the totality of the

6

circumstances Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed. 2d 295 (1993). The conduct must create an objectively hostile or abusive work environment and the victim must also perceive the environment to be abusive. Spriggs v. Diamond Ato Glass, 242 F.3d 179 (4th Cir., 2001) (citing Lissau v. Southern Food Serv., Inc. (citations omitted)). Relevant considerations may include: (1) the frequency of the discriminating conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or of a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance Harris v. Forklift Sys., Inc., 510 U.S. at 23.

In the present action, the Defendant has characterized the comments of Mr. Helms as periodic "jokes" that were uttered over a course of more than two years. As a result, they cannot possibly rise to the level of establishing a hostile or abusive environment. "Far more than a "mere offensive utterance," the word "nigger" is pure anathema to African-Americans." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 185 (4th Cir., 2001). No single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an "unambiguously racial epithet such as 'nigger.'" Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 675 (7th Cir., 1993). The use of the word "nigger" automatically separates the person addressed from every non-black person; this is discrimination *per se*. Bailey v. Binyon, 583 F.Supp 923, 927 (N.D.Ill. 1984). The user of such terms intends only one thing: to degrade those to whom he refers in the most offensive manner. Mullen v. Princess Anne Volunteer Fire, Inc., 853 F.2d 1130 (4th Cir., 1988).

Mr. Helms' insults were sufficiently severe or pervasive (or both) to cause a person of ordinary sensibilities to perceive that the work atmosphere at CMES was racially hostile.

> 2. **CMES Is Liable Because Management Failed To Take Effective Remedial Action When Advised Of The Racially Hostile Work Environment At The School.**

An effective anti-harassment policy provides compelling proof that an employer has exercised reasonable care to prevent harassment. Lissau v. Southern Food Service, Inc., 159 F.3d 177, 182 (4th Cir., 2003). However, where evidence is presented showing that the employer implemented a workplace policy in bad faith or has failed to adequately enforce the policy, proof of reasonable care can be rebutted. Id. The mere creation of an anti-harassment policy, "no matter how well-conceived, will not suffice to show the requisite level of care where the employer has administered the policy in bad faith or has rendered it ineffectual by acting unreasonably." Brown v. Perry, 184 F.3d 388, 395 (4th Cir., 1999).

In this case, the only actions taken against Mr. Helms were a note in his file and "counseling" with Ms. Trumps about the inappropriate nature of his comments. While Mr. Helms acknowledged the comments were inappropriate, he did not change his behavior and he continued to speak negatively to and about Mr. Bernard.

Jean D. Meta, Esquire<br>
Federal Bar No.: 15569<br>
Law Office of Jean D. Meta<br>
133 Defense Highway, Suite 111<br>
Annapolis, Maryland 21401<br>
Telephone: (410) 224-0755<br>
Facsimile: (410) 224-7079<br>
Attorney for Plaintiff