# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

**EDWARD G. BERNARD, JR.,**

       **Plaintiff,**

**v.**

**CALHOON MEBA ENGINEERING SCHOOL,**

       **Defendant.**

**Case No. AMD-03-CV-531**

### DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Dated: Washington, D.C.
      November 7, 2003

BEINS, AXELROD, KRAFT, GLEASON & GIBSON, P.C.
    Barbara Kraft, Esq.
    1717 Massachusetts Avenue, N.W., Suite 704
    Washington, D.C. 20036-2001
    Attorneys for Defendant
    CALHOON MEBA ENGINEERING SCHOOL

VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
    Neal I. Korval, Esq.
    Jonathan A. Wexler, Esq.
    805 Third Avenue
    New York, New York  10022
    Telephone:  (212) 407-7700
    Facsimile:  (212) 407-7799
    Attorneys for Defendant
    CALHOON MEBA ENGINEERING SCHOOL

## TABLE OF CONTENTS

                                                                                                                                Page

PRELIMINARY STATEMENT ........................................................................................................ 1

FACTS ............................................................................................................................................. 2

ARGUMENT .................................................................................................................................... 3

I.   PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF HOSTILE WORK
     ENVIRONMENT ................................................................................................................. 3

     A.   Mr. Helms' Scattered Remarks Are Insufficient To Constitute A Racially Hostile
          Environment ............................................................................................................. 3

     B.   There Is No Basis For Employer Liability Because the School Took Prompt And
          Effective Remedial Action Upon Gaining Notice of Mr. Helms' Remarks ....................... 7

II.  PLAINTIFF HAS PROPERLY ABANDONED HIS CLAIM FOR RETALIATION ................. 8

CONCLUSION ................................................................................................................................ 9

## TABLE OF AUTHORITIES

**Page**

**Cases**

Bailey v. Binyon, 583 F.Supp. 923, (N.D.Ill. 1984) .................................................................. 5

Burlington Industries v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) ..... 5, 6

Carter v. Morgan, 34 Fed.Appx. 427, (4th Cir., 2002) ............................................................. 3

Causey v. Balog, 162 F.3d 795, (4th Cir 1998) ....................................................................... 3

Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed2d 662 (1998) ......... 6

Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L,Ed,2d 295 (1993) ............ 4

Harris v. L&L Wings, Inc., 132 F.3d 978 (4th Cir., 1997) ........................................................ 7

Matvia v. Bald Head Island Management, Inc., 259 F.3d 261 (4th Cir, 2001) ......................... 9

Mikels v. City of Durham, N.C., 183 F.3d 323 (4th Cir, 1999) ........................................ 4, 5, 8

Mullen v. Princess Anne Volunteer Fire, Inc., 853 F.2d 1130 (4th Cir., 1988) ........................ 5

Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668 (7th Cir., 1993) ................................ 5

Spicer v. Virginia, 66 F.3d 705 (4th Cir. 1995) ........................................................................ 8

Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir., 2001) ............................................ 5, 6

Swentek v. USAIR, Inc., 830 F.2d 552, 558 (4th Cir., 1987) .................................................... 8

Von Gunten v. Maryland, 243 F.3d 858, 870 (4th Cir., 2001) .............................................. 4, 9

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**EDWARD G. BERNARD, JR.,**

        Plaintiff,

v.

**CALHOON MEBA ENGINEERING SCHOOL,**

        Defendant.

Case No. AMD-03-CV-531

**DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

Defendant, Cahoon MEBA Engineering School ("CMES") respectfully submits this Reply Memorandum of Points and Authorities ("Reply") in response to the Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp.") submitted by Plaintiff Edward G. Bernard ("Plaintiff" or "Mr. Bernard").

The gist of Plaintiff's argument is that the handful of comments having racial content made by Mr. Bernard's co-worker, Will Helms ("Mr. Helms"), are sufficiently severe and pervasive to create a racially hostile work environment (Pl. Opp. pp. 6-7), and that CMES did not take effective remedial action when Mr. Bernard complained about Mr. Helms' comments (Pl. Opp. p. 8). Both arguments are incorrect as a matter of law, as discussed below.

## **FACTS**

The Statement of Facts in Plaintiff's Opposition does not take issue with *any* of the factual statements made in Defendant's initial Memorandum of Points and Authorities, although a few additional facts are mustered from the record.  Thus, Plaintiff adds that Ms. Trumps, the Human Resources Manager, has not conducted formalized training for CMES supervisors on how to address claims of harassment, although he concedes that in February, 2002, Ms. Trumps conducted training about changes to the CMES workplace harassment policy.  (Pl. Opp. p. 2)  Similarly, Plaintiff supplements the list of Mr. Helms' bad remarks set forth in CMES's initial Memorandum with an additional comment regarding fellatio, a comment about which Mr. Bernard did not testify but that is noted in the Complaint.  (Pl. Opp. p. 3)

Notably, Plaintiff's Opposition concedes the following critical facts: (1) that Plaintiff's first complaint to his supervisor about Helms' alleged racial remarks was made on September 2, 2003, although he had earlier complained about other aspects of Mr. Helms' behavior toward him (Pl. Opp. pp. 3-4); (2) that Ms. Trumps investigated the complaint the next day and that Mr. Bernard reported only a single comment by Helms to her ( a comment on August 30 that "they're treating us all like niggers") (Pl. Opp. p. 4); (3) that Mr. Bernard's and Mr. Helms' supervisor had already obtained an apology from Mr. Helms to Mr. Bernard and the two had shaken hands (*Id.*); (4) that Ms. Trumps met with Mr. Helms and told him that his racial joking must never happen again, that the incident would be documented and become a permanent part of his file, and that further incidents would lead to further discipline, but this was the only discipline given to Mr. Helms (Pl. Opp. pp. 4, 6); (5) that within three days of Mr. Bernard's complaint the Director of CMES met with the entire Maintenance Department (except Mr. Bernard, who asked to be excused) and reminded them about respecting one another and not to participate in name calling, abusive language or racial harassment, among other things (Pl. Opp. p. 4);

(6) that the Director also assured Mr. Bernard personally that offensive language would not be tolerated and that any recurrence should be reported to her or to Ms. Trumps (Pl. Opp. pp. 4-5); (7) that the Director and Ms. Trumps had another meeting with Mr. Bernard to discuss a a remark supposedly made by Mr. Helms to a different African-American employee that Mr. Bernard had heard about second-hand, and also to address certain threatening statements that Mr. Bermard had made regarding Mr. Helms in an earlier meeting with the Director and Ms. Trumps (Pl. Opp. p. 5); (8) that both the Director and Ms. Trumps held follow-up meetings with Mr. Bernard to ensure that there was no recurrence of offensive remarks (*Id.*); and (9) that Mr. Bernard never reported any additional racial remarks. (*Id.*)

## ARGUMENT

I. **PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF HOSTILE WORK ENVIRONMENT**

    A. **Mr. Helms' Scattered Remarks Are Insufficient To Constitute A Racially Hostile Environment**

As conceded by Plaintiff (Pl. Opp. p. 6), to establish a claim for a racially hostile work environment, Mr. Bernard must show that: (1) the harassment was unwelcome; (2) the harassment was based on his race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on his employer. Causey v. Balog, 162 F.3d 795, 801 (4th Cir 1998); Carter v. Morgan, 34 Fed.Appx. 427, 429 (4th Cir., 2002). Even assuming for the sake of argument that Mr. Helms' "jokes" (if they can be called that) constitute harassment, Mr. Bernard cannot satisfy either the third or the fourth elements necessary to establish a *prima facie* case. The third—demonstrating that the harassment was sufficiently severe or pervasive to constitute a hostile work environment—is manifestly not met here, even if everything that Mr. Bernard testified to occurred in the manner that he described. Harris v. Forklift Sys.,

Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L,Ed,2d 295 (1993); Von Gunten v. Maryland, 243 F.3d 858, 870 (4th Cir., 2001).

Plaintiff argues that despite the fact that the six offensive "jokes" and comments made by his coworker, Mr. Helms, occurred over the space of about two years (until Plaintiff first complained about such a joke in early September 2002), the use of the "n" word, in and of itself, makes the comments sufficiently severe to create a racially hostile environment. The cases he cites to support this proposition (Pl. Opp. p. 7), however, are readily distinguishable, and there is no basis to impose liability on CMES because of a *co-worker's* unreported offensive remarks, no matter how offensive they are.

First, it is undisputed that the alleged harasser was a coworker rather than a supervisor. For harassment perpetrated by fellow employees, employers are "liable only for their own negligence in failing, after actual or constructive knowledge, to take prompt and adequate action to stop it." Mikels v. City of Durham, N.C., 183 F.3d 323, 331-32 (4th Cir, 1999). It is undisputed that CMES had no knowledge of any racial remarks by Mr. Helms prior to Mr. Bernard's complaint on September 3, 2002, and undisputed that Mr. Bernard only complained at that time about a single remark. Thus, apart from the question of whether CMES took prompt and adequate action to stop the offensive behavior, which is discussed below, the absence of any evidence that CMES knew about the offensive behavior prior to Mr. Bernard's complaint to his supervisor dooms his cause of action based on a racially harassing environment (Count I).

Second, all four of the cases cited by Mr. Bernard in his Opposition to support his contention that his coworker's use of the "n" word created a hostile environment *per se* are easily distinguished. The three cited cases that arose in the employment context involved *supervisory* harassment, rather than harassment by a coworker. Spriggs v. Diamond Auto Glass, 242 F.3d 179, 181-82 (4th Cir., 2001); Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 670-71 (7th Cir., 1993); Bailey v. Binyon, 583

4

F.Supp. 923, 924-25 (N.D.Ill. 1984).  The Supreme Court and the Fourth Circuit have explicitly held that the determinant of employer liability for a hostile work environment is whether the particular conduct was "aided by the agency relation," and, "absent some elaborate scheme," harassment by a fellow employee, having no authority over the victim, can never be found to be so aided.  See Burlington Industries v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 2268-69, 141 L.Ed.2d 633 (1998); Mikels v. City of Durham, N.C., 183 F.3d 323, 331-32 (4th Cir, 1999).

For such "unaided" harassment by fellow employees, employers are "liable only for their own negligence in failing, after actual or constructive knowledge, to take prompt and adequate action to stop it."  Mikels, 183 F.3d at 332 (citing Ellerth).  Therefore, in order to hold CMES liable for the comments of his coworker, Mr. Bernard would have to establish that CMES failed to take prompt and adequate remedial action after acquiring actual or constructive knowledge of the comment, a requirement which Mr. Bernard has utterly failed to meet.  Regardless whether the use of the "n" word by a supervisor creates a hostile environment *per se*—a question that depends on the factual context—cases so holding offer no guidance when dealing with an unreported use of the word by a co-worker.  The standard for liability is completely different.

The fourth case cited by plaintiff, Mullen v. Princess Anne Volunteer Fire, Inc., 853 F.2d 1130 (4th Cir., 1988), is wholly inapposite, as it involved a plaintiff who had been refused membership by an uncompensated volunteer fire company, and the only issue remotely related to this case, was whether or not evidence of the regular use of racial slurs by individuals making hiring/membership decisions should be admissible, a point which is neither relevant nor contested in the case at hand.

Three of the cases cited by plaintiff predate the Supreme Court's delineation of the standard for imposition of employer liability in hostile environment cases in Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed2d 662 (1998) and Burlington Industries v. Ellerth, 524 U.S. 742,

5

118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).  While the cases cited have not been explicitly overruled, this fact does indicate that they should be approached with caution even if they addressed factual situations similar to those in Mr. Bernard's case, which they do not.

Finally, the facts of Spriggs v. Diamond Auto Glass, 242 F.3d 179, (4th Cir., 2001)—the sole case cited by plaintiff that represents both recent and jurisdictionally controlling authority—bear little resemblance to Mr. Bernard's situation at CMES.  In Spriggs, the plaintiff's *supervisor* subjected him to a barrage of "incessant racial slurs, insults and epithets," variously characterized as "continuous," "routine," "habitual," "daily," and "frequent".  Id. at 181-85.  Mr. Bernard's attempt to equate such a genuinely abusive environment perpetrated by the employer's supervisory agent with what occurred at CMES, trivializes the experience of the plaintiff in Spriggs.[1]  The harassing behavior alleged in Spriggs thus differed from that experienced by Mr. Bernard both in terms of pervasiveness and severity.  Mr. Bernard's use of the Spriggs court's dictum regarding the gravity of a particular epithet is unavailing, because the isolated use of that epithet was not the sole basis of the Fourth Circuit's decision, as Mr. Bernard seeks to make it here.

### B. There Is No Basis For Employer Liability Because the School Took Prompt And Effective Remedial Action Upon Gaining Notice of Mr. Helms' Remarks

While he argues that CMES failed to take effective remedial action after Mr. Bernard complained (Pl. Opp. p. 8), Plaintiff's own Statement of Facts in his Opposition conclusively demonstrates that CMES took immediate and ongoing remedial action as soon as it learned of

---

[1] Indeed, it is not clear that subjectively Mr. Bernard was even offended by the alleged second comment in July.  His testimony suggests that the objectionable remark, or one like it, was a source of amusement to him: "I'll admit on that I kind of chuckled when I walked away" after Helms, who was digging a hole "or something like that," said he was doing "nigger work."  (Deposition of Edward Bernard, p. 116.) (See Exhibit A in the Exhibits supporting Defendant's Motion for Summary Judgment.)

6

Mr. Helms' comment[2]: Ms. Trumps investigated, the Director gave a talk to the Department, both followed up with Mr. Bernard to be sure there was no recurrence, Mr. Helms was warned, the supervisor had Mr. Helms apologize, Mr. Helms and Mr. Bernard shook hands, Mr. Helms was admonished and a permanent notation was put in his file, Mr. Helms was warned that the conduct must not recur . . . and more than ten months later Mr. Helms repeated an offensive remark, only this time Mr. Bernard was apparently amused by it and in any event, he didn't report it.

Short of firing Mr. Helms, a remedy which even Mr. Bernard concedes would have been unwarranted (Bernard, pp. 136-37), it is unclear what Plaintiff would have had CMES do, or why he argues that the course of action that CMES adopted was inadequate. "The legal standard of 'prompt and adequate remedial action' in no way requires an employer to dispense with fair procedures for those accused or to discharge every alleged harasser." Harris v. L&L Wings, Inc., 132 F.3d 978, 984 (4th Cir., 1997).

Plaintiff cites no case law whatsoever in support of his claim that CMES' method of addressing the problem was inadequate (Response, p. 8). In fact, the bulk of Fourth Circuit case law confirms the adequacy of CMES' course of remedial action. Adequacy does not necessitate that a given course of action be "the most certainly effective that could be devised." Instead, the single most important factor in making a determination of the adequacy of remedial activity, is whether or not any further harassing behavior was reported. Mikels v. City of Durham, N.C., 183 F.3d at 329-30, "When an employer's remedial response results in the cessation of the complained of conduct, liability must cease as well." Spicer v. Virginia, 66 F.3d 705, 711 (4th Cir. 1995); see also Swentek v. USAIR, Inc., 830 F.2d 552, 558 (4th Cir., 1987) (treating as probative of adequacy of remedial response the fact that following reprimand no further complaints were made against the alleged harasser).

---

[2] The Court should note that Mr. Bernard had only reported a single remark to Ms. Trumps.

7

It is undisputed that Mr. Bernard did not report any additional racial remarks following CMES' implementation of remedial action, and although almost eleven months after the remark of which he complained a similar remark was allegedly made by Mr. Helms, Mr. Bernard apparently found it amusing and in any event did not report it. The claim in the Opposition that "[Mr. Helms] did not change his behavior and he continued to speak negatively to and about Mr. Bernard" (Pl. Opp. p. 8) is not supported by the record, and in any event is plainly unavailing; because they were not racial in nature and Mr. Bernard does not claim even to have reported them. There is thus no evidence whasotever that CMES' remedial action was either inappropriate or ineffective.

For these reasons CMES should have summary judgment on Count I of the Complaint.

## II.     PLAINTIFF HAS PROPERLY ABANDONED HIS CLAIM FOR RETALIATION

The Opposition makes no mention whatsoever of retaliation, strongly suggesting that Mr. Bernard has conceded that he did not suffer any retaliation by CMES. In any event, the law remains clear on this subject, and Mr. Bernard has no evidence to support a *prima facie* case of retaliation because he suffered no adverse employment action and also because he has no evidence of a causal connection between any protected activity in which he engaged and anything that CMES did with respect to his employment. Furthermore, Mr. Bernard has no evidence that anything done by CMES was a pretext for retaliation. Von Gunten v. Maryland, 243 F.3d 858, 863 (4th Cir., 2001); Matvia v. Bald Head Island Management, Inc., 259 F.3d 261, 271 (4th Cir, 2001).

For these reasons, the Court should enter summary judgment on Count II of the Complaint.

## CONCLUSION

For all of the above reasons and those stated in the motion for summary judgment and memorandum in support, defendant CMES should be granted summary judgment on the Complaint in its entirety.

Dated: Washington, D.C.
        November 7, 2003

Respectfully submitted,

BEINS, AXELROD, KRAFT, GLEASON & GIBSON, P.C.

By:_____
    Barbara Kraft, Esq.  Bar No. 09105
    1717 Massachusetts Avenue, N.W., Suite 704
    Washington, D.C. 20036-2001
    Attorneys for Defendant
    CALHOON MEBA ENGINEERING SCHOOL

VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.

By:_____
    Neal I. Korval, Esq.
    Jonathan A. Wexler, Esq.
    805 Third Avenue
    New York, New York  10022
    Telephone:  (212) 407-7700
    Facsimile:   (212) 407-7799
    Attorneys for Defendant
    CALHOON MEBA ENGINEERING SCHOOL